UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WENDY MCKENNA,

      Plaintiff,

v.                             **MEMORANDUM OF LAW & ORDER**
                              Civil File No. 14-3257 (MJD/LIB)

HARTFORD LIFE & ACCIDENT
INSURANCE CO.,

      Defendant.

Thomas R. Witt and Donald C. Erickson, Fryberger, Buchanan, Smith & Frederick, PA, Counsel for Plaintiff.

Kristen G. Marttila, Susan E. Ellingstad, and David W. Asp, Lockridge Grindal Nauen P.L.L.P., Counsel for Defendant.

## I.    INTRODUCTION

      This matter is before the Court on the parties' cross-motions for summary judgment. [Docket Nos. 17, 27] The Court heard oral argument on September 4, 2015, and orally ruled that this matter is remanded to Defendant Hartford Life & Accident Insurance Company ("Hartford") for consideration of the May 2014 functional capacity evaluation conducted by Phillip Haber, M.S., Psy. D. (Haber

1

Report, Administrative Record ("A.R.") 297-300, 303-324.) In accordance with that oral order, the Court issues the following Memorandum of Law and Order.

## II. BACKGROUND

### A. Brief Factual Background

Target Corporation ("Target") sponsored a group long-term disability ("LTD") plan ("Plan") issued by Hartford. (A.R. 1-42.) The Plan provides Hartford with "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy." (A.R. 15.)

Under the Plan, an insured is disabled when, during the first 24 months after the elimination period, the insured is unable to perform one or more of the essential duties of her own occupation. (A.R. 16.) After the first 24 months, the insured is disabled if she cannot perform one or more of the essential duties of any occupation. (<u>Id.</u>)

Plaintiff Wendy McKenna worked for Target and was a participant in and beneficiary of the Plan. (A.R. 193.) Target approved McKenna for short-term disability benefits through August 31, 2010, based on a fibromyalgia diagnosis. (A.R. 1856, 1858.) On September 30, 2010, Hartford approved McKenna's LTD application under the own occupation standard. (A.R. 288.)

In February 2012, Hartford began gathering information in advance of the any occupation test change in September 2012.  (A.R. 126-27.)  On September 7, 2012, Hartford informed McKenna that, based on "a thorough review of all the medical and vocational information in her claim file," it had approved McKenna for continued LTD benefits under the any occupation standard.  (A.R. 244.)

After approving McKenna's claim, Hartford continued to monitor McKenna.  Based on Facebook postings and subsequent surveillance, Hartford sought new opinions from two of McKenna's treating physicians, Dr. Daniel Axelrod, M.D., and Dr. James Weiner, M.D., regarding her ability to work 40 hours per week with certain restrictions.  (A.R. 1996, 2016-20.)  Based on the video surveillance, Weiner opined that McKenna was capable of full-time, light-duty work.  (A.R. 675, 677.)  He further opined that she might "be capable of a higher level of functional activity and, therefore, a functional capacities evaluation would be necessary to further assess this."  (A.R. 677.)  On June 4, 2013, Hartford sent Weiner's letter and report to Axelrod for a response.  (A.R. 670.)  On June 6, Axelrod responded that he disagreed with Weiner's conclusion.  (Id.)

On August 8, 2013, based on the surveillance, Weiner's new report, and the independent medical review from Hartford's consulting physician, Hartford informed McKenna that it was terminating her benefits because she was no longer disabled under the any occupation standard. (A.R. 211.) It noted the consulting physician's opinion "that there are no objective clinical physical exam findings to support any restrictions or limitations." (A.R. 215.)

On November 4, 2013, McKenna filed a handwritten pro se appeal of the termination and submitted updated medical information. (A.R. 388-97; 404-05.) After receiving McKenna's appeal, Hartford requested and received updated medical records from McKenna's treating physicians. (A.R. 57.) On February 24, 2014, based on the record and new independent medical reviews from Hartford's consulting physicians, Hartford upheld its termination of LTD benefits. (A.R. 193-99.)

After Hartford denied McKenna's appeal, she retained counsel and underwent a functional capacity evaluation ("FCE") by psychologist and rehabilitation counselor Phillip Haber, M.S., Psy. D. (A.R. 297-300, 303-324.) The FCE was conducted on May 12 through May 14, 2014. (A.R. 303, 322.) Haber

concluded that McKenna could not work full-time, or even 20 hours per week. (A.R. 323.)

On June 19, 2014, McKenna attempted to submit the Haber Report to Hartford. (A.R. 301.) Hartford retorted that the new information was untimely and would not be considered. (A.R. 43, 191-92.)

### B. Procedural History

On August 25, 2014, McKenna filed a Complaint against Hartford in this Court. The Complaint asserts one count: an ERISA claim to recover benefits, enforce rights, and clarify rights to future benefits under 29 U.S.C. § 1132(a)(1)(B).

McKenna has now brought a motion for summary judgment. She requests an award of benefits, or, in the alternative, she requests that the Court remand the matter to Hartford for reconsideration of the entire record, including the Haber Report. Hartford has brought a cross-motion for summary judgment.

### III.   DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

5

P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case."  Amini v. City of Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

   B.   **Applicable Standard of Review**

The Plan provides Hartford with "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy."  (A.R. 15.)  Thus, the Court reviews Hartford's decision to terminate McKenna's LTD benefits under the abuse of discretion standard.  Waldoch v. Medtronic, Inc., 757 F.3d 822, 829 (8th Cir. 2014).

"Under the abuse of discretion standard, the court must affirm the plan administrator's interpretation of the plan unless it is arbitrary and capricious."  Manning v. Am. Republic Ins. Co., 604 F.3d 1030, 1038 (8th Cir. 2010).

> To determine whether a plan administrator's decision was arbitrary and capricious, the court examines whether the decision was reasonable.  Any reasonable decision will stand, even if the court would interpret the language differently as an original matter.

Id. (citations omitted).  Under this standard, the Court "must affirm if a reasonable person <u>could</u> have reached a similar decision, given the evidence before him, not that a reasonable person <u>would</u> have reached that decision." <u>Prezioso v. Prudential Ins. Co. of Am.</u>, 748 F.3d 797, 805 (8th Cir. 2014) (citation omitted).  The decision must be supported by substantial evidence, which means "more than a scintilla but less than a preponderance."  <u>Gorvik v. Unum Life Ins. Co. of Am.</u>, 702 F.3d 1103, 1109 (8th Cir. 2013) (citations omitted).

  **C.**  **Whether Hartford Should Have Considered the Haber Report**

  In general, a plan administrator acts reasonably if it denies benefits based on a lack of objective evidence that a claimant is disabled.  <u>See</u> <u>McGee v. Reliance Standard Life Ins. Co.</u>, 360 F.3d 921, 924-25 (8th Cir. 2004).  A plan administrator may require a claimant who has fibromyalgia to still provide objective medical evidence to support the extent of her claimed disability.  <u>See</u> <u>Pralutsky v. Metro. Life Ins. Co.</u>, 435 F.3d 833, 839 (8th Cir. 2006); <u>Johnson v. Metro. Life Ins. Co.</u>, 437 F.3d 809, 814 (8th Cir. 2006).  However, "it may well be unreasonable for an administrator to expect a claimant to provide 'objective evidence' if the administrator does not provide an adequate explanation of the information sought."  <u>Pralutsky</u>, 435 F.3d at 839.  Additionally, a plan "administrator may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions

of a treating physician." Willcox v. Liberty Life Assur. Co. of Boston, 552 F.3d 693, 701 (8th Cir. 2009) (citation omitted).

Hartford does not dispute that McKenna suffers from fibromyalgia. Rather, it argues that McKenna was required, but failed, to submit objective evidence of the extent of her limitations. Hartford notes that "[o]ne method of objective proof of disability, for instance, is a functional capacity evaluation, a reliable and objective method of gauging the extent one can complete work-related tasks." Huffaker v. Metro. Life Ins. Co., 271 F. App'x 493, 500 (6th Cir. 2008) (citation omitted).

When Hartford terminated McKenna's benefits in August 2013, it told her that its independent reviewing physician had concluded "that there are no objective clinical physical exam findings to support any restrictions or limitations." (A.R. 215.) It did not mention that an FCE was necessary, although the only physician who examined her and concluded that she might be able to return to work without substantial restrictions, Weiner, had opined that an additional FCE was necessary to fully assess her capabilities. (A.R. 677.)

At the time Hartford terminated McKenna's benefits in August 2013, she was unrepresented. In her pro se appeal, she described how fibromyalgia affects

and limits her life.  (A.R. 388-97.)   She further submitted a letter from her primary care physician, Dr. Kenneth Irons, M.D., opining that "her illness has totally changed her ability to function."  (A.R. 404.)  He opined that she had worked hard to find treatment that would allow her to return to work, but that, "[a]t this point, I feel that her medical conditions are very real and that she is truly disabled."  (Id.)

From a layperson's point of view, neither the initial nor the final termination letter clearly identified what type of objective evidence would be sufficient beyond what McKenna had already submitted.  The Court concludes that Hartford did not put McKenna on notice of the type of evidence she needed to provide with her appeal.  McKenna did not understand that Hartford was seeking evidence such as an FCE until after her appeal was denied and she was represented by counsel.  The Court concludes that she has shown good cause for failing to obtain and submit the Haber Report before Hartford closed the administrative record.

The Court concludes that Hartford should consider the Haber Report, along with the rest of the administrative record, before making its final benefits determination.  Thus, the Court will remand this matter to Hartford to evaluate

the Haber Report and consider the expanded record before issuing its claim

decision.  See Willcox, 552 F.3d at 699.

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment [Docket No. 17] is **GRANTED IN PART** and **DENIED IN PART** as follows: This matter is remanded to Defendant for proceedings consistent with this opinion.

2. Defendant's Motion for Summary Judgment [Docket No. 27] is **DENIED**.


Dated:  December 9, 2015          s/ Michael J. Davis
                                  Michael J. Davis
                                  United States District Court